IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| PARK VIEW APT, LLC, | Case No. 24-11663 (LSS) |
| Debtor. | **Re: Docket No. 197 & 199** |

## MEMORANDUM ORDER

On March 19, 2026, the Office of the United States Trustee moved to dismiss ("Motion to Dismiss") the Park View Apt., LLC ("Debtor") bankruptcy case.[1] Debtor does not oppose dismissal.[2] American First National Bank, N.A ("American First") agrees that the case should be dismissed, but objects to dismissal until Debtor disburses to it all the funds in Debtor's debtor-in-possession bank account ("DIP Account").[3]

Separately, on April 7, 2026, American First filed a motion seeking to enforce a previous stipulation between the parties ("Motion to Enforce"), which essentially seeks the

---

[1] United States Trustee's Mot. for Order Dismissing Debtor's Chapter 11 Case, Dkt. No. 197.

[2] Debtor's Omnibus Obj. to (I) Mot. of Am. First Nat'l Bank, N.A. for Entry of an Order Enforcing This Ct.'s Order Approving Stipulation between Park View Apt, LLC and American First, N.A. [D.I. 190] and (II) United States Trustee's Mot. for Order Dismissing Debtor's Chapter 11 Case ¶¶ 1, 2, Dkt. No. 203.

[3] Ltd. Obj. of Am. First Nat'l Bank, N.A. to United States Trustee's Mot. for Order Dismissing Debtor's Chapter 11 Case ¶¶ 1-2, Dkt. No. 201; Mot. of Am. First Nat'l Bank, N.A. for Entry of Order Enforcing This Ct.'s Order Approving Stipulation between Park View Apt, LLC and Am. First, N.A. ¶ 30, Dkt. No. 199.

same relief with respect to the DIP Account.[4]  Debtor objects to the Motion to Enforce.[5]

On April 23, 2026, I held a joint hearing on the Motion to Dismiss and the Motion to Enforce.  The motions are ripe for decision.[6]

**Background**

The following facts are undisputed.

Debtor filed its bankruptcy case on August 6, 2024.  Debtor owned two parcels of land: 719 South Park View Street and 2400 West 7th Street, Los Angeles, California (collectively, the "Property").  From the beginning, American First, Debtor's prepetition secured lender, was the main (and only) creditor participant in the case.

Eventually, Debtor filed a plan of reorganization and a confirmation hearing was held on October 7, 2025.  American First objected to confirmation.  To resolve American First's objection, the Confirmation Order requires American First's claim to be resolved

---

[4]  Mot. of Am. First Nat'l Bank, N.A. for Entry of Order Enforcing This Ct.'s Order Approving Stipulation between Park View Apt, LLC and Am. First, Dkt. No. 199.  In its reply in support of the Motion to Enforce, American First also seeks an order ruling on the propriety of a *lis pendens* recently filed in relation to the Property (defined below).  As this issue was only first raised in the reply brief, I will not rule on it at this time.  Further, having recently addressed a *lis pendens* dispute in another bankruptcy case, that issue may be more appropriately raised in the California state court system where the underlying dispute is pending.

[5]  Debtor's Omnibus Obj. to (I) Mot. of Am. First Nat'l Bank, N.A. for Entry of an Order Enforcing This Ct.'s Order Approving Stipulation between Park View Apt, LLC and American First, N.A. [D.I. 190] and (II) United States Trustee's Mot. for Order Dismissing Debtor's Chapter 11 Case, Dkt. No. 203.

[6]  Debtor asserts that relief sought in the Motion to Enforce can only be brought by an adversary proceeding.  Debtor's Omnibus Obj. ¶¶ 3-7.  At the same time, Debtor agrees that I should not dismiss the bankruptcy case until the disposition of the funds in the DIP Account is resolved.  *Id.* ¶¶ 1-2.  When asked what it intended to do with the funds should it prevail, Debtor's counsel represented that Debtor would use the funds to pay administrative claims of the estate.  *See also id.* ¶ 2 (funds should be "available to all creditors").  This matter could, therefore, be viewed as a motion to use cash collateral.  As there are no facts in dispute, the matter has been briefed and argued and there are no actual due process concerns, I have determined to rule on the issue in this posture.

before the plan can go effective.  Specifically, the Confirmation Order provides:

> 7.      The Effective Date of the Plan shall occur on the date, as determined by the Debtor, when the conditions set forth in Article II.K of the Plan have been satisfied or waived in accordance with the Plan.  The following pre-condition to the Effective Date is added to the Plan, which may only be waived with the written consent of the Debtor and American First National Bank, N.A. ("American First"): (i) the Court shall have entered a Final Order adjudicating the Allowed amount of American First's claim that has been assigned claim no. 2 (the "American First Claim") and (ii) such claim shall have been indefeasibly paid in full.[7]

The American First Claim was filed in the amount of $11,193,661.09 (as of July 31, 2025).  To ensure Debtor's objection to the American First Claim did not linger, the hearing on the claim objection was scheduled for December 10, 2026.

Prior to the scheduled hearing, chambers was informed that the parties had resolved the matter and a stipulation would be submitted under Certification of Counsel.  The certification was filed and the I entered an order ("Stipulated Order") approving the stipulation ("Stipulation") on December 13, 2025.[8]  The Stipulation is between Park View Apt, LLC in its capacities as both a debtor and a reorganized debtor and American First.  As reflected in the Stipulation, American First's loan to Debtor arises from the following documents: a Bank Promissory Note, a Business Loan Agreement, a Bank Deed of Trust, an Assignment of Rents, a Commercial Guaranty, a Note Modification Agreement and a Certificate of Deposit.[9]  Two paragraphs of the Stipulation are particularly relevant here:

> 1.      In accordance with the terms and conditions of this Stipulation, the Claimant shall have an allowed first-priority secured claim against the Debtor in the total amount of $10,400,000 (the "Claim Amount") as full satisfaction of

---

[7] Findings of Fact, Conclusions of Law, and Order Confirming Debtor's Second Am. Chapter 11 Plan of Reorganization ¶ 7, Dkt. No. 176.

[8] Order Approving Stipulation between Park View Apt, LLC and Am. First Nat'l Bank, N.A., Dkt No. 190.  The Stipulation is attached to the Stipulated Order as Exhibit 1.

[9] Stipulation 2-3.

3

the Claim, subject to the Claimant's timely, indefeasible receipt of payment in full of the Claim Amount no later than 4:00 p.m. (prevailing Eastern Time) on December 17, 2025, as reflected by a completed wire transfer from escrow to the wiring information confirmed in writing by the Claimant (the "Payment Deadline"), subject to the provisions of Paragraph 2 below.[10]

5.      In the event the Claimant does not indefeasibly receive the full Claim Amount by the Payment Deadline, (i) the automatic stay under section 362 of the Bankruptcy Code shall immediately and automatically terminate without further order of the Bankruptcy Court as to the Claimant, with the Debtor's consent, and (ii) the Claimant shall retain and may exercise all of its rights and remedies under applicable law and the Loan Documents, including without limitation the right to enforce and collect the full amount of its indebtedness without regard to the Claim Amount and the Guaranty.  The Debtor and Dr. Lavi hereby (z) stipulate that Claimant holds a valid, properly perfected first lien against all of Debtor's interests in real and personal property pursuant to, without limitation, Claimant's recorded Deed of Trust and Assignment of Rents, and (y) agree that, if the automatic stay under section 362 of the Bankruptcy Code is terminated pursuant to this Stipulation, neither Dr. Lavi, the Debtor, nor any of its principals, affiliates, employees, or any other person acting on its behalf shall in any way seek to prohibit or frustrate Claimant's exercise of its rights with respect to its collateral, including without limitation foreclosure of the Property.[11]

Debtor did not pay American First by the Payment Deadline, the plan did not go effective, the automatic stay was terminated and American First exercised its foreclosure rights with respect to the Property.[12]  The foreclosure did not satisfy the American First Claim.

**The Issue Presented**

The issue presented is whether American First, which has an undisputed assignment of and perfected interest in rents, is entitled to the funds in the DIP Account.  Per the Monthly Operating Report for the period ended January 31, 2026, there was $419,577 in the

---

[10] Stipulation ¶ 1.

[11] Stipulation ¶ 5.

[12] Mot. to Enforce, Ex. D.

4

DIP Account.[13] Per the initial Monthly Operating Report for the period ended September 30, 2024, there was $237,524 in the DIP Account.[14] Accordingly, it appears that the DIP Account holds rents collected prepetition and postpetition.

**The Parties' Positions**

American First argues that the funds in the DIP Account are its cash collateral since Debtor's only source of revenue is rents.[15] It follows, therefore, that the funds cannot be used without American First's consent and must be turned over to American First before the case is dismissed.

Debtor does not deny that American First has an assignment of rents and also perfected its interest in rents prepetition. Nor does it contend that the funds in the DIP Account came from a source other than rents. Rather, Debtor argues that under California law, American First has no right to the funds in the DIP Account because it did not take the required enforcement action against the rents before they were collected.[16] Debtor argues that under California law a lender is not entitled to rents collected prior to taking an affirmative enforcement step, regardless of whether the assignment is characterized as absolute.[17] A lender must demand possession after default, and because American First

---

[13] Chapter 11 Monthly Operating Report for the Month Ending: 01/31/2026, Dkt. No. 198.

[14] Chapter 11 Monthly Operating Report for the Month Ending: 09/30/2024, Dkt No. 52.

[15] Mot. to Enforce ¶¶ 1, 24.

[16] Debtor's Omnibus Obj. to (I) Mot. of Am. First Nat'l Bank, N.A. for Entry of an Order Enforcing This Ct.'s Order Approving Stipulation between Park View Apt, LLC and American First, N.A. [D.I. 190] and (II) United States Trustee's Mot. for Order Dismissing Debtor's Chapter 11 Case ¶ 9, Dkt. No. 203.

[17] Debtor's Omnibus Obj. ¶ 10 (citing *In re Goco Realty Fund I*, 151 B.R. 241 (Bankr. N.D. Cal. 1993). That is the only case cited by Debtor in support of its position, although it also briefly discusses a case cited by American First.

took no enforcement step prior to foreclosure, it "never obtained any right to collect or possess the rents in the DIP Account."[18] American First also did not seek adequate protection, obtain a cash collateral order or pursue any other remedy to obtain possession or control of the rents during the bankruptcy case.[19] Thus, according to Debtor, the rents are property of Debtor's estate and any interest American First had "in the rents was, at most, an unexercised security interest."[20]

*Discussion*

### A.  State Court Analysis

Debtor relies primarily on *In re: GOCO Realty Fund I*.[21] The issue the *GOCO* Court faced was "whether a secured creditor's interest in rents continues after the trustor transfers the proceeds from rents to an attorney as a retainer . . . ."[22] There, the debtor paid its attorneys prepetition retainers from accounts which contained income from rents and other sources. The attorneys deposited those retainers into their respective client trust accounts and billed against the retainer. One firm (Wilson Sonsini) completed its work and refunded $80,000 to GOCO. Two other firms (Bartko, Tarrant and Howard, Rice) still held their retainers (against future work) in their respective trust fund accounts.

GOCO thereafter filed its bankruptcy case. The debtor's only secured creditor (New West) attacked on several fronts. First, it argued that the retainers held by Bartko, Tarrant

---

[18]  Debtor's Omnibus Obj. ¶¶ 10-11.

[19]  Debtor's Omnibus Obj. ¶ 11.

[20]  Debtor's Omnibus Obj. ¶ 13.

[21]  151 B.R. 241 (Bankr. N.D. Cal. 1993).

[22]  *GOCO* at 246.

and Howard, Rice were property of the estate because GOCO had an interest in the retainers notwithstanding that the firms held the funds. Second, it argued that each retainer was paid from its cash collateral, i.e., rental income, so that the retainers of each of the three law firms could not be used by GOCO in its bankruptcy case.

It was undisputed that, prepetition, New West had an absolute assignment of rents and had perfected its interest in rents. The lender's security instruments were properly recorded and, after default, it recorded notices of default. But, pre-bankruptcy, New West had taken no steps to enforce its rights to the rents. So, GOCO argued that it could use the prepetition income from its properties at its discretion, including to pay retainers.

The court turned to the California statute and held that "[t]he literal words of the statute plainly anticipate an enforcement step by a lender who holds legal title to rents arising from a perfected conditional absolute assignment of rents before the lender is entitled to possession."[23] The court observed that "California law holds that even when an assignment is absolute, an affirmative enforcement step in addition to perfection is a prerequisite to the lender's possession of the rents, and that the lender is entitled to all the rents, issues, and profits from the time of demand upon the defaulting borrower to deliver possession and pay over the rents."[24] On default, "enforcement brings an inchoate interest to fruition and the lender acquires priority in rents arising only after enforcement."[25]

Applying these general principles to the facts before it, the *GOCO* Court held that the lender's interest in prepetition rents, although properly perfected, was inchoate at the time

---

[23] *Id.* at 247 (discussing Cal. Civ. Code § 2398 (2026)).

[24] *Id.* at 248.

[25] *Id.*

7

GOCO paid the retainers to the law firms. Thus, as GOCO argued, there was no restriction on its ability to pay the retainers at that time. The GOCO Court explained: "[b]ecause New West had taken no action to enforce its security interest prior to May 21, 1992, New West did not have the right to actual possession of the rents collected by [the debtor] and transferred prior to New West's enforcement."[26] New West would have had an additional hurdle in any event because the rents, both prepetition and postpetition, were held in a commingled account.

Debtor's reliance on this portion of the *GOCO* decision is unavailing. There, the debtor had used the rents in the ordinary course prior to the lender taking an enforcement step to restrict debtor's use. Once transferred, those funds were out of the hands of the debtor and belonged to others. Here, Park View did not use the funds in the ordinary course of business (either prepetition or postpetition) to make payments to vendors, attorneys or otherwise. The collected rents have never left Park View's hands. Rather, the collected rents, generated either prepetition or postpetition, sit in Park View's (non-commingled) account.[27]

---

[26] *Id.* at 250. May 21, 1992 is the date New West filed a complaint in state court for sequestration of rents, GOCO separately sued New West and GOCO filed its chapter 11 petition. *Id.* at 245.

[27] I do not have to decide the rights between American First and a third-party transferee (such as Bartko, Tarrant and Howard, Rice). The matter before me involves only Debtor and American First. As between the two of them, American First has a perfected interest. In other words, as between the lender and the borrower, the lender has a secured, perfected interest.

The California statute does not suggest otherwise. It is directed at the collection of rents that have yet to be paid by tenants. For example, subsection (c) provides that an assignee can enforce the assignment such that after it does so, it is entitled to collect the rents itself, including those "that have accrued but remain unpaid and uncollected by the assignor" as well as all rents that "accrue on or after th[at] date." Cal. Civ. Code § 2398(c) (2026). As another example, subsection (d) provides that once an assignee has taken an enforcement action, it is "effective as against the tenant when actually received by the tenant at the address for notices provided under the lease . . . ." *Id.* § 2398(d). Consistent with these examples, the statute does not restrict action taken against the borrower for

8

*B. Bankruptcy Law Analysis*

My determination of this issue is also guided by the second issue decided by the *GOCO* Court, which Park View does not address—namely, the intersection between the required enforcement action outside bankruptcy and the concept of cash collateral in bankruptcy. New West argued that the retainers were property of the estate and therefore cash collateral under § 363. After evaluating the type of retainers held by the law firms, the *GOCO* Court determined that they were property of the estate because both the law firms and GOCO had an interest in the retainers on the petition date.[28] The *GOCO* Court further held, however, that even though the retainers were property of the estate, they did not constitute cash collateral as New West's secured interest in the rent ended prepetition when the rents were used. The *GOCO* Court explains:

> Highlighting this analysis is the treatment of the unused portion of the retainer that Wilson, Sonsini returned to GOCO after the law firm completed its legal work. GOCO segregated these funds from its post-petition rents. New West asserts that the returned funds are now cash collateral because they are proceeds of rents currently in the possession of the estate. However, New West's security interest in the rents was unenforced and terminated when the rents were transferred pre-petition. The lien did not attach to proceeds after transfer, and the proceeds are not traceable. Thus, the lien cannot be revived by New West attempting to characterize the funds returned to GOCO by Wilson, Sonsini post-petition as cash collateral.[29]

And, it then concludes:

> The Court's determination that the retainers are property of GOCO's bankruptcy estate does not necessarily lead to the conclusion that the retainers are New West's cash collateral, as New West theorizes. To constitute cash collateral under section 363(a), the retainers must be subject to New West's security interest. New West lost its right to the rents that were transferred prior

rents already collected. Or, in other words, the statute does not address action to execute on the assignee's secured interest vis-à-vis the assignor for rents already collected.

[28] *GOCO* at 250-51.

[29] *GOCO* at 252.

9

to its demand because it failed to enforce the assignments of rents by making demand prior to the transfer to the Law Firms. New West's argument is further diminished because the rents were commingled in the debtor's bank account and cannot be traced.

\*          \*          \*

Under both California law and federal bankruptcy law, a secured creditor that has not enforced a properly perfected assignment of rents is not entitled to possession of rental proceeds that are transferred to third parties. Therefore, New West's Motion for the return of the pre-petition retainers is denied, and New West is not entitled to adequate protection for use of the funds.[30]

*GOCO*'s teaching is clear. Under California law and bankruptcy law, the focus of the inquiry at issue is not the collection date (as Park View argues); it is the transfer date. If the rents were transferred prior to the enforcement action, the lender has no interest in the rents. If not, and the rents remain with the borrower in a segregated account, the lender's interest subsists.

*GOCO* also touches upon a more straightforward Bankruptcy Code analysis. The *GOCO* Court unequivocally states that "[t]here is no dispute that rents generated post-petition from the properties are cash collateral and that [the lender] is entitled to adequate protection for their use."[31] Based on this observation, I can conclude for this reason as well

---

[30] *Id.*

[31] *Id.* at 250 (citing *Sears Sav. Bank v. Tucson Indus. Partners (In re Tucson Indus. Partners)*, 129 B.R. 614, 625 (B.A.P. 9th Cir. 1991) (applying Arizona law), *vacated as moot*, 990 F.2d 1099 (9th Cir. 1993); *In re Pavilion Place Assocs.*, 89 B.R. 36, 39 (Bankr. D. Minn. 1988) (applying Minnesota law and holding that "[w]hile the conditions precedent might not have occurred as of filing regarding the [creditor's] rents, that does not change the fact that the post-petition rents are subject to the [creditor's] security interest and become its cash collateral under 11 U.S.C. § 363. It is true that the automatic stay prevents [the creditor] from undertaking steps to enforce its rights in the cash collateral. However, it is equally true that the Debtor is prohibited from using the same cash collateral without first obtaining an order allowing the use pursuant to 11 U.S.C. § 363."); *N.Y. Life Ins. Co. v. Bremer Towers*, 714 F. Supp. 414, 418 (D. Minn. 1989) (applying Minnesota law and holding that "[t]he fact that a creditor did not enforce that perfected interest prior to bankruptcy does not invalidate the interest, it merely stays the enforcement of that interest pending the bankruptcy court's determination of the party's entitlement to it."); *In re Constable Plaza Assocs., L.P.*, 125 B.R. 98 (Bankr. S.D.N.Y. 1991) (applying New York law and holding that postpetition rents are property of the estate and cash collateral); *In re Brandon Assocs.*, 128 B.R. 729, 730 (Bankr. W.D. Va. 1991) (applying Virginia law and answering in the affirmative the question of "whether the post-petition rents

10

that the rents generated postpetition residing in the DIP Account are American First's cash collateral.

But, the GOCO *Court* does not squarely address rents generated prepetition residing in the DIP Account. Fortunately, the Bankruptcy Code answers that question. Section 363(a) provides:

> In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, *rents*, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, *whether existing before or after the commencement of a case under this title.*[32]

By its plain language, the Code defines cash collateral as rents in which the estate and another entity have an interest, whether the rents exist before or after the commencement of the case. Thus, as one court has noted:

> [t]here can be little doubt that where an assignment of rents has been properly recorded, rents collected by the debtor prepetition and held in an identifiable

---

generated from operation of the apartment complex owned and operated by the debtor are cash collateral within the meaning of 11 U.S.C. § 363(a)" even when creditor did not enforce its lien prepetition by obtaining possession or a receiver); *In re Coventry Commons Assocs.*, 143 B.R. 837 (E.D. Mich. 1992) (holding that rents are cash collateral under Michigan law and that additional requirements for enforcement against tenants are not required when the assignee seeks to enforce the assignment against the assignor only); *Vienna Park Props. v. United Postal Sav. Ass'n (In re Vienna Park Props.)*, 976 F.2d 106 (2d Cir. 1992) (applying Virginia law, citing to *Bremer Towers* and *Pavilion Place* (at length), holding that the enforceability inquiry is simply "not relevant" to determining the existence of the interest for purposes of a cash collateral analysis ("the enforceability of an interest is an issue distinct from . . . whether a security interest exists under § 552(b)") and concluding that rents are cash collateral)).

*See also* 3 Collier on Bankruptcy ¶ 363.03[3][b][i] (Richard Levin & Henry J. Sommer eds.,16th ed. 2026) (discussing amendments to § 552(b) in the Bankruptcy Act of 1994 and explaining the reference to applicable nonbankruptcy law was deleted to clarify "that absolute perfection is not required" in order for lender to have an interest in the rents for purposes of cash collateral.)

[32] 11 U.S.C. § 363(a) (emphasis added).

11

account constitute cash collateral even in the absence of an affirmative prepetition act to enforce direct collection of rents.[33]

Thus, rents collected prepetition and postpetition and in which the lender has an interest are cash collateral.

Finally, Park View's argument that American First has no interest in the funds in the DIP Account because it took no steps during the bankruptcy case to protect that interest does not change this result. It is true that American First took no steps during the bankruptcy case to obtain these funds, but Debtor cites no case for the proposition that this was necessary. Per § 363(c)(2), Debtor could not use these funds without consent (which it did not have) or court authorization (which it did not seek).[34] To date, Debtor has honored this mandate. Now, in essence, Debtor seeks to use American First's cash collateral, to which American First objects. As I have determined that the funds in the DIP Account are cash collateral, and it is undisputed that American First's secured claim has not been paid in full, the funds must be turned over to American First.[35]

---

[33] *In re 1560 Wilson Boulevard L.P.*, 206 B.R. 819, 824 (Bankr. E.D. Va. 1996) (applying Virginia law).

[34] 11 U.S.C. § 363(c)(2) provides:

> (2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless –
>
> > (A) each entity that has an interest in such cash collateral consents; or
> >
> > (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

[35] It might be different if American First were asking for adequate protection. It is not. *See, e.g., In re Continental Airlines, Inc.*, 146 B.R. 536, 539 (Bankr. D. Del. 1992) ("the better view is that adequate protection may only be awarded from the date movants seek relief.").

**Conclusion**

Based on Debtor's authority, I conclude that the funds in the DIP Account, which are rents secured by American First's assignment of rents and perfected security interest, are cash collateral. Accordingly, I will grant the Motion to Enforce to the extent set forth herein. The parties should confer and settle an order.

Dated: June 9, 2026

Laurie Selber Silverstein
United States Bankruptcy Judge

13